THE TOWNSHIP OF HAMILTON, IN THE COUNTY OF MERCER, RELATOR, v. MERCER COUNTY TRACTION COMPANY ET AL., RESPONDENTS.

Argued November 5, 1915—Decided April 4, 1916.

1. The acceptance by a street railway company, incorporated under the laws of this state, of an ordinance of a municipality establishing the route of its road and the location of its tracks, imposes upon the company the duty to construct, maintain and operate such railway in accordance with the terms of the ordinance, and in compliance with statutes which confer upon the company such rights, privileges and franchises. An implied condition attaches itself to the grant of the franchise that it is held for public benefit, and the duty of the company is to exercise it for such purpose, and, the grant being exclusive, the company must be held to a good faith in the performance of its duty, which must be fulfilled until lawfully surrendered, suspended or abandoned by the legally expressed consent of the state.

2. *Mandamus* will lie to compel a street railway company to construct, maintain and operate its road for the benefit of the public, if a legal duty to do so is imposed by law and there is a clear violation of such duty, unless performance is for some reason impossible.

3. A street railway company, incorporated under the laws of this state, which takes over by lease the rights, privileges and franchises of another such street railway company, by that act assumes the correlative duties and obligations of the franchise, and upon it rests the same burden and duty to construct, maintain and operate such street railway under the statutes and the ordinances of the municipality as were imposed upon the original company.

4. A street railway company, incorporated under the laws of this state, that accepts in writing, within the time and in the manner required by the statute, an ordinance of a municipality establishing the route of its road and the location of its tracks, and enters upon the construction of its road, is under a duty to complete and operate such road, even though it has failed to file with the municipal clerk a contract covenanting "to abide by

and perform all the matters and things in the ordinance contained," as required by the terms of such ordinance; and at the instance of the municipality a *mandamus* will issue to compel the performance of such duty.

5. In the absence of any tender of a surrender of the franchise, the fact that the located route of a street railway in a highway is laid across the tracks of a steam railroad which cross such highway, and that the right to cross such tracks at grade has not been obtained, furnishes no excuse why the street railway should not be completed and operated upon its route through the highways of the municipality lying on either side of such steam railroad.

6. When a street railway company, incorporated under the laws of this state, has failed to complete the construction of its road within the time limited by the ordinance of the municipality establishing its route and the location of its tracks, which it duly accepted, the company is not excused from performance by the fact that the municipality has failed to act upon a proposed ordinance submitted by the company indefinitely extending the time for completion, when the municipality has always insisted and still insists upon performance.

7. The fact that a street railway company, incorporated under the laws of this state, stopped work on its road for four weeks consecutively after being notified by the municipality to proceed, furnishes no excuse why the road should not be completed, even though the ordinance of the municipality establishing its route and the location of its tracks provides that if the company stops work before completion for four weeks consecutively after notice to proceed has been given, then the permission to lay the tracks "shall be null and void," when it appears that the municipality has always insisted and still insists upon the completion of the road.

---

On rule to show cause why a writ of *mandamus* should not issue.

Before Justices GARRISON, TRENCHARD and BLACK.

For the relator, *Alvin W. Sykes* and *Linton Satterthwaite.*

For the respondents, *George W. Macpherson, W. Holt Apgar* and *Frank Bergen.*

The opinion of the court was delivered by

TRENCHARD, J.   This is a rule to show cause why a writ of *mandamus* should not issue commanding the respondents

forthwith to complete the construction of a street railway from the westerly terminus thereof (in the village of Yardville) to the village of North Crosswicks on the line thereof, and thence to the easterly terminus thereof, within a reasonable time, and to operate the same, in accordance with the provisions of an ordinance of the township of Hamilton passed February 7th, 1906.

The facts are as follows:

The respondent the Mercer County Traction Company, a street railway company, incorporated under the laws of this state, asked for, procured and accepted the ordinance in question.

The ordinance granted to the company permission to construct, maintain and operate a street railway in, upon and along highways of the township of Hamilton, and established the route of its road and the location of its tracks between the *termini* above mentioned.

The ordinance was passed as a substitute for other ordinances passed by the township granting to the same company permission to construct and operate a street railway over a line which included the line in question, which ordinances were surrendered and such surrender accepted by the relator.

During the existence, and under the authority of one or more of such surrendered ordinances, the company constructed a portion of the line from Yardville to North Crosswicks, along the route described in the ordinance of February 7th, 1906, but no part of it was ever operated.

On October 15th, 1910, the company leased to the respondent the Trenton and Mercer County Traction Corporation, among other things, all its railways, as then located or constructed, and also all rights, powers, privileges and franchises for nine hundred and ninety-nine years, and the lessee agreed to operate the "railways and other property" so demised during such term.

The ordinance of February 7th, 1906, provided that the work of construction should be completed by May 1st, 1907, unless prevented by municipal improvements on the public highway or delayed by litigation.

No municipal improvements or litigation have prevented or delayed such construction.

On March 1st, 1911, the relator notified the Mercer County Traction Company to complete the construction of the railway from Yardville to North Crosswicks on or before September 1st, 1911.

Thereafter there was correspondence between the relator and both respondents, in which promises were made to construct the road and requests that relator should delay *mandamus* proceedings, until on or about April 16th, 1913, when the respondent the Mercer County Traction Company filed a petition with the board of public utility commissioners praying for permission to construct its line of railway across the Pennsylvania Railroad Company's tracks at Yardville, where the route of the street railway as located by the ordinance of February 7th, 1906, crosses such steam railroad tracks. Hearings on the petition were continued from time to time, and finally were adjourned without any conclusion or determination, in order to permit the respondents and the railroad company to reach an agreement concerning such crossing.

Further correspondence took place between the relator and the respondents. To obviate the difficulty of crossing the steam railroad at grade the Mercer County Traction Company purchased land abutting the highway on both sides of the steam railroad for the purpose of making an elevated detour over the railroad. On January 10th, 1914, the counsel of the respondents wrote to the relator that the Mercer County Traction Company had directed its officers "to proceed and act with the Pennsylvania Railroad Company for the erection of the overhead bridge at Yardville, and the Trenton and Mercer County Traction Corporation to place the railway in good operating condition." On April 22d, 1914, the president of respondent the Trenton and Mercer County Traction Corporation wrote, "We are going to reconstruct the trolley line to Crosswicks this season;" and again on June 3d, 1914, "We are now about ready to commence the rebuilding of the tracks between Yardville and Crosswicks."

On June 24th, 1914, a draft of an ordinance indefinitely extending the time for constructing the railway was submitted by the Mercer County Traction Company to the relator and its passage requested. This proposed ordinance was laid on the table by the township committee of relator, and no further action taken thereon.

In July, 1914, material for the reconstruction of the line between Yardville and North Crosswicks was distributed along the highway, and men in the employ of the respondent the Trenton and Mercer County Traction Corporation replaced some decayed ties and defective rails, but that was all.

Further complaint on the part of the relator brought from the president of the respondent the Trenton and Mercer County Traction Corporation a letter of October 13th, 1914, saying that unfavorable financial conditions had prevented more rapid construction of the work and that "we take this opportunity, however, of again assuring you of our expectation of continuing it to completion."

The work of reconstruction was not resumed, and that part of the material deposited in 1914, which had not been used to repair the track, has, since the beginning of the year 1915, been carted away.

Neither respondent has ever suggested a surrender of the franchise or release from the obligation to construct and operate the railway under the ordinance of February 7th, 1906.

On April 29th, 1915, this rule to show cause why a writ of *mandamus* should not issue was obtained.

We are of the opinion that a writ of *mandamus* must issue.

The acceptance of the ordinance imposed upon the company the duty to construct, maintain and operate such railway in accordance with the terms of the ordinance, and in compliance with statutes which confer upon the company such rights, privileges and franchises. The company was invested with important prerogative franchises, among which are the right to build and use the railway, and to charge and take fares. These prerogatives are grants from the government, and public utility is the consideration for them. An implied

condition attaches itself to the grant of the franchise that it is held for the public benefit, and the duty of the company is to exercise it for such purpose, and the grant being exclusive, the company must be held to a good faith in the performance of its duties, which must be fulfilled until lawfully surrendered, suspended or abandoned by the legally-expressed consent of the state. *Bridgeton* v. *Traction Company*, 62 *N. J. L.* 592.

*Mandamus* will lie to compel a street railroad company to construct, maintain and operate its road for the benefit of the public, if a legal duty to do so is imposed by law, and there is a clear violation of such duty, unless performance is for some reason impossible. *Bridgeton* v. *Traction Company, supra;* 26 *Cyc.* 365.

A street railway company, incorporated under the laws of this state, which takes over by lease the rights, privileges and franchises of another such street railway company, by that act assumes the correlative duties and obligations of the franchise, and upon it rests the same burden and duty to construct, maintain and operate such street railway under the statutes and the ordinances of the municipality as were imposed upon the original company. *Bridgeton* v. *Traction Company, supra.*

The respondents contend that no duty is imposed upon them to complete and operate the road because they say that the Mercer County Traction Company failed to file with the township clerk a contract covenanting "to abide by and perform all the matters and things in the ordinance contained," as required by the terms of such ordinance. But we think there is no merit in that contention. It is conceded that the company filed an acceptance of the ordinance, in writing, with the secretary of state, and a copy thereof with the clerk of the relator, within the time and in the manner required by the statute, and has recognized the validity and binding effect of the ordinance by entering upon the construction of the road. The duty of the company to complete and operate the road is therefore clear.

It is contended that the construction and operation of the road is impossible, and is therefore excused, because of the

inability of the company to obtain the right to cross at grade the tracks of the steam railroad which crosses the highway through which the street railway is located.

It may be assumed that an effort was made in good faith to obtain such right of crossing and that the effort failed. But no doubt this was a contingency within the contemplation of both parties when the ordinance was passed and accepted, and we think it falls short of showing impossibility of performance under the circumstances of this case.

We have pointed out that the company proposed to effect an overhead crossing of the steam railroad, and for that purpose has acquired land abutting the highway and on both sides of the steam railroad. It is conceded that this overhead crossing may be accomplished simply by diverting the track from the highway to the land thus acquired on either side of the steam railroad. The respondents, however, say that they have not obtained from the relator the formal right to thus divert their tracks. But they have never applied for such right, and there is no reason to suppose that if applied for it would be denied. In this matter good faith has not been shown.

But, apart from this, in the absence of any tender of a surrender of the franchise, the fact that the located route of the railway is laid across the tracks of a steam railroad, and that the right to cross such tracks at grade has not been obtained, furnishes no excuse why the street railroad should not be completed and operated upon the route through the highways of the municipality upon either side of such steam railroad. *Bridgeton* v. *Traction Company, supra.* If permission to cross at grade cannot be obtained, and if the respondents prefer not to pursue their plan of overhead crossing, they can still exercise their franchise in behalf of the public without reference to the steam railroad crossing by completing the construction and operating their line on either side thereof.

It is contended that the company is excused from performance because the township failed to act upon the proposed ordinance submitted by the company indefinitely extending the time fixed in the ordinance of February 7th, 1906,

for the completion of the road. But, clearly, that is not so. The township throughout has insisted, and now insists, that the road shall be built regardless of the time limit.

Lastly, it is argued that the company is excused from performance because it stopped work on its road before completion for four weeks consecutively, after being notified by the township to proceed. There is no merit in that contention. True the ordinance provides that if the company stops work before completion for four weeks consecutively, after notice to proceed has been given, then the permission to lay the tracks "shall be null and void." But the township has not seen fit to avail itself of that provision, but, on the contrary, has always insisted, and still insists, upon performance.

These conclusions, in effect, dispose of every question argued.

The rule to show cause will be made absolute, and a writ of peremptory *mandamus* awarded in accordance with it, with costs.